OPINION
{¶ 1} This appeal arises from the judgment of the Hancock County Common Pleas Court, Juvenile Division, refusing to change residential and legal custody of Adelaine C. Moothart and of Ember L. Moothart, the minor children of Jennifer and Terrance Moothart. The maternal grandmother of Adelaine and Ember Moothart, Barbara E. Thomas files this appeal.
 {¶ 2} For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 3} Due to a self-recognized inability to parent Adelaine and Ember, their two minor children, Jennifer and Terrance Moothart (the "Mootharts") voluntarily consented to give Barbara E. Thomas (appellant), the maternal grandmother of the children, legal custody of Adelaine on January 27, 1995, and consented to give Christine and Chauncy Nalle[1] (also appellees, the "Nalles"), the paternal grandparents of the children, legal custody of Ember L. Moothart on August 9, 1999.
 {¶ 4} Thereafter, the Mootharts had a third daughter, Cheyenne Lee Moothart, who remained in their custody until January 11, 2001, when she was found dead in her bassinet. The death of Cheyenne prompted Ms. Thomas to file a complaint for custody of Ember on February 6, 2001, on the grounds that the Nalles had allowed Ember to be in the care of and live with the Mootharts up to the date of Cheyenne's death despite their lack of capacity to properly care for Ember. In response, Jennifer Moothart filed a motion to vacate the consent judgment entry granting Ms. Thomas custody of Adelaine. The Nalles also filed a motion for custody, and in the alternative, visitation with Adelaine.
 {¶ 5} The custody complaints were consolidated and heard from March 13 through March 15, 2002. At the commencement of the hearing, the Mootharts voluntarily withdrew their motion to vacate the consent judgment that granted Ms. Thomas custody of Adelaine. The matters left to be heard involved the two complaints for custody of Adelaine and Ember by Ms. Thomas and the Nalles.
 {¶ 6} The magistrate's decision, filed on May 28, 2002, retained the prior consent judgment entries. However, the decision set forth a visitation schedule enabling the Mootharts to spend time with their children, and also granted visitation to each non-custodial grandparent. Ms. Thomas filed an objection to the magistrate's decision. The trial court entered a judgment ratifying and affirming the magistrate's decision.
 {¶ 7} Barbara Thomas now appeals asserting the following four assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I
The trial court erred and abused its discretion by allocating custody of Ember L. Moothart to Defendants Christine and Chauncy Nalle, as the evidence clearly indicated that such an allocation of custody was not in the best interest of Adelaine C. Moothart and Ember L. Moothart.
 {¶ 8} Generally, under Ohio law, depending on the circumstances, child custody disputes fall within the coverage of one of two statutes.[2] They are R.C. 3109.04 and2151.23.[3] In order to determine the applicable statute, it is first necessary to understand the nature of the relationship of the parties involved. The typical child custody cases usually involve the competing interest of the biological parents, or may involve a dispute between a parent and a non-parent. In the case sub judice, however, the child custody dispute involves the competing complaints of two non-parents. Jennifer and Terrance Moothart, the natural parents of Adelaine and Ember Moothart, granted Ms. Thomas, the maternal grandmother, parental rights, including the care and legal custody of Adelaine in a consent judgment entry filed on January 27, 1995. Likewise, on August 9, 1999, the Mootharts granted the Nalles, the paternal grandmother and step-grandfather, parental rights, responsibilities, and legal custody of Ember by consent judgment entry. Adelaine and Ember have remained in the custody of Ms. Thomas and the Nalles, respectively, up until, and including the present. The grand-parents have each filed a complaint for custody seeking custody of the child not presently in their care.
 {¶ 9} The primary purpose of R.C. 3109.04 is to provide guidance to domestic relations courts for the allocation of parental rights and responsibilities between divorcing parents.[4] Although the custody arrangement made by the Mootharts was not the result of an action for divorce, annulment or alimony, R.C. 3109.04 nonetheless, controls. R.C.3109.04(A) states that "In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parentalrights and responsibilities for the care of a child * * * the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage."[5] Therefore, because the Mootharts had previously granted legal custody and allocated parental rights and responsibilities of their children to Ms. Thomas and the Nalles in prior consent judgment entries, R.C. 3109.04 is generally applicable.[6]
 {¶ 10} When a prior decree allocating parental rights and responsibilities for the care of children is in existence, a complaint requesting a modification of that allocation must satisfy the requirements set forth in R.C. 3109.04(E)(1)(a).[7] Under R.C.3109.04(E)(1)(a),[8] when determining whether to modify custody, three factors generally guide a trial court's decision: (1) whether a change in circumstances has occurred since the previous decree, (2) whether a modification is in the child's best interests, and (3) whether the benefits resulting from the modification outweigh any harm likely to be caused by a change of environment.[9]
 {¶ 11} Once an original custody award has been made, the general rule is that the award will not be modified unless, pursuant to R.C.3109.04(E)(1)(a), a change of circumstances is demonstrated.[10] The party seeking to modify the award has the burden of showing that a change in circumstances has occurred.[11] The change must be significant, something more then a slight or inconsequential change.[12]
 {¶ 12} Although, in the case before us, the trial court did not apply the three part analysis set forth in R.C. 3109.04(E)(1)(a), the failure to do so in this instance is harmless error. First, Ms. Thomas did not support her complaint for custody by specifying that a "change in circumstances" had occurred since the prior custody decree. Second, although the trial court did not determine the threshold question of whether or not a change of circumstances had occurred, it did expressly find that a change in custody would not be in the best interest of Adeline and Ember. Since all three elements of R.C. 3109.04(E)(1)(a) must be satisfied in order to modify a prior custody decree, it follows, therefore, that even if Ms. Thomas had been successful in showing a change in circumstance, she would have failed the three-part test in3109.04(E)(1)(a) because the court found that it was not in the best interest of the children to modify the prior custody agreements.
 {¶ 13} Nonetheless, Ms. Thomas argues that the trial court's determination of the "best interest" of the children was arbitrary, capricious, and unreasonable. Ms. Thomas specifically asserts that the trial court abused its discretion by failing to consider the factors outlined in R.C. 3109.04(F). The basis of this argument is that when determining the "best interest" of a child, whether it is an original proceeding or a proceeding to consider a modification of a prior custody order, R.C. 3109.04 mandates that the court must consider all relevant factors, including, but not limited to, those factors enumerated in R.C.3109.04(F)(1).[13]
 {¶ 14} The trial court did, in fact, make findings related to the statutory factors listed in R.C. 3109.04(F)(1) and concluded that it was in Ember's best interest that the Nalles remain to be her residential parents. The trial court considered the wishes of Jennifer Moothart;[14]
the court also noted that due to Adelaine having attention deficit disorder, her need for consistency in her surroundings;[15] the court also addressed the children's interaction and relationship with one another, their grandparents, and their parents.[16] It is also apparent from the testimony heard by the trial court that both Adelaine and Ember are well adjusted to the current custodial arrangements.[17]
 {¶ 15} It is within the trial court's discretion to determine with whom to place legal custody of the children.[18] A reviewing court will not reverse the judgment of a trial court absent an abuse of discretion.[19] To constitute an abuse of discretion, a trial court's determination regarding the best interest of the child must have been arbitrary, unreasonable, or unconscionable.[20]
 {¶ 16} It is evident from the lower court's judgment entry that its primary concern was the ability of either grandparent to take on the responsibility of caring for two children. The court, in considering the competing interest of the parties, noted that each grandparent had a limited ability to care for one grandchild. For example, the court expressed its concern over the fact that that Ms. Thomas already relied upon her elderly mother and father to provide care for Adelaine while Ms. Thomas was at work. This arrangement would become even more difficult if Ms. Thomas was granted custody of both Adelaine and Ember.
 {¶ 17} The trial court also heard and considered the testimony of Ms. Thomas, the Nalles, the Mootharts, friends, family, and the Guardian Ad Litem for Ember in making its determination of the best interest of the children. For example, the Guardian Ad Litem assigned to Ember stated that custody of Ember should remain with the Nalles.[21]
 {¶ 18} Upon review, this court concludes that the judgment of the juvenile court did not constitute an abuse of discretion. The juvenile court found that the best interest of the children would be served by continuing their stable home environments and that this would best be accomplished by retaining the prior allocations of custody. The trial court's decision refusing to change the residential and legal custody of Ember was not arbitrary, unreasonable, or unconscionable.
 {¶ 19} The appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II
The trial court erred and abused its discretion in creating a visitation schedule that fails to serve the best interests of Adelaine C. Moothart and Ember L. Moothart.
 {¶ 20} In support of this assignment of error, the appellant asserts that the visitation schedule adopted by the trial court does not adequately serve the best interests of the minor children. Specifically, appellant contends that Adelaine and Ember should have more consistent and frequent time with their parents than provided for by the trial and that the children should see one another more than just on weekends.
 {¶ 21} The standard of review concerning child visitation rights is whether an abuse of discretion has been committed.[22] We cannot say that the visitation schedule adopted by the trial court was unreasonable under the circumstances. The Mootharts are entitled to parenting time with both Adelaine and Ember every other weekend from 9:00 a.m. on Saturday until 6:30 p.m. Sunday evening, and on all holidays and the girls' birthdays. Ms. Thomas is granted one weekend per month in which Ember will stay the weekend in her home. Likewise, the Nalles are granted one weekend per month in which Adelaine will stay in their home.
 {¶ 22} Ms. Thomas claims that, in order to facilitate any chance of reunification between the parents and their children, that more visitations must be reserved for the parents, not the grandparents. Regardless of her intentions, Ms. Thomas is without standing to assert the rights of the Mootharts.
 {¶ 23} In regard to visitation between Adelaine and Ember, the visitation schedule allows for them to be together a minimum of 112 days a year. If the visitation schedule is followed, Adelaine and Ember will see one another nearly every weekend of the year and on all holidays and their birthdays. There is nothing to prohibit the parties from voluntarily arranging for the children to spend more time together than that provided for by the trial court. If the parties cooperate, the court's visitation can be the minimum, rather than the maximum amount of time the children spend with one another.
{24} Accordingly, We do not find that the court abused its discretion in establishing visitation among the various family members. The appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III
The trial court erred and abused its discretion by ordering Plaintiff Barbara E. Thomas to pay Dr. Sean Austin, as there is no evidence on the record that indicates that any money is due Dr. Austin.
 {¶ 25} In a judgment entry filed on August 1, 2001, the trial court decreed that "[t]he Parties shall attempt mediation as a means to resolve the issues in this matter and will cooperate with the mediator." Ms. Thomas and the Nalles did indeed attend several mediations in an attempt to resolve the custody dispute. The record does not contain a copy of a statement or otherwise disclose an amount that is owed to the mediator, Dr. Sean Austin.
 {¶ 26} Pursuant to domestic relations rule 2.25 of the Hancock County Common Pleas Court, "the cost of mediation shall be the initial subject of mediation, and shall be paid by the parties pursuant to their fee agreement with the mediator."[23] Although the nature of the fee agreement among the parties and Dr. Austin it is not apparent from the record, the appellant participated in the mediation process. Thus, the trial court did not error by ordering that the cost of mediation to be paid by both Ms. Thomas and the Nalles.
 {¶ 27} Accordingly, the appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV
The trial court erred and abused its discretion by striking portions of the Supplement to Plaintiff's Objections to Magistrate's Decision filed May 28, 2002.
 {¶ 28} The trial court sustained the Nalles' "motion to strike the supplement to plaintiff's objections to magistrate's decision." The trial court did not strike Ms. Thomas's entire supplement; it struck only those portions concerning items not offered into evidence at the magistrate's hearing. Specifically, the trial court denied Ms. Thomas's attempt to submit four documents into evidence. The documents in question were a "motion for an immediate conference of all parties," which had previously been filed by the CASA/GAL of Hancock County, and a "motion to remove CASA/GAL," previously filed by Ms. Thomas. The other two documents were letters written in regards to the above listed motions. One of the attached letters was from Ms. Thomas's attorney addressed to the CASA, and the other was a response letter from CASA to Ms. Thomas's attorney.
 {¶ 29} A trial court's decision to grant or overrule a motion to strike is within its sound discretion and will not be overturned on appeal absent a showing of an abuse of discretion.[24] The Nalles' motion to strike was properly granted by the trial court.
 {¶ 30} Civ.R. 12(F) states that "[u]pon motion made by a party before responding to a pleading * * * within twenty-eight days after the service of the pleading upon him, the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter." Upon timely filing of the motion to strike,[25] the trial court struck the documents offered by Ms. Thomas from the record as being insufficient for review because they had not been identified, authenticated, and had not been subjected to cross examination during the hearing before the magistrate.
 {¶ 31} Additionally, Civ.R. (E)(4)(b) states that the trial court "* * * may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." The "motion for an immediate conference of all parties," the "motion to remove CASA/GAL," and the attached letters were available and part of the record which Ms. Thomas could have, but did not, attempt to have admitted into evidence for consideration at the hearing before the magistrate. Therefore, pursuant to Civ.R. (E)(4)(b), it was within the trial court's discretion to grant the Nalles' motion to strike.
 {¶ 32} The appellant's fourth assignment of error is overruled.
 {¶ 33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
SHAW, J., concurs. BRYANT, P.J., concurs in judgment only.
[1] It should be noted that Christine Nalle is the biological maternal grandmother of the children, while Chauncey Nalle is the step-grandfather of the children.
[2] Hockstock v. Hockstock (2002), 98 Ohio St.3d 238, at ¶ 13.
[3] Id.
[4] See Gorslene v. Huck (Oct. 24, 2001) Licking App. No. 01CA40.
[5] Emphasis added.
[6] For example, see, Henry v. Stutzman (Nov. 13, 2001) Madison App. No. CA2001-01-001; and In re Byerly (Sept. 30, 1998) Portage App. Nos. 97-P-0096 and 97-P-0097.
[7] See Bragg v. Hatfield (Mar. 19, 2003), Vinton App. No. 02CA567, at ¶ 17.
[8] R.C. 3109(E)(1)(a) states that: The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
* * *
(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
[9] See Beaver v. Beaver (2001), 143 Ohio App.3d 1, 9; Clark v.Smith (1998), 130 Ohio App.3d 648, 653; Stover v. Plumley (1996),113 Ohio App.3d 839, 842.
[10] See Masitto v. Masitto (1986), 22 Ohio St.3d 63, 68.
[11] See Wilburn v. Wilburn (2001), 144 Ohio App.3d 279, 283-284; In reWhiting (1990), 70 Ohio App.3d 183, 187;
[12] See Beaver v. Beaver (2001), 143 Ohio App.3d 1, 9; Clark v. Smith
(1998), 130 Ohio App.3d 648, 653; Stover v. Plumley (1996),113 Ohio App.3d 839, 842.
[13] R.C. 3109.04(F)(1) states that: In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding the child's care;
(b) If the court has interviewed the child in chambers, * * * the wishes and concerns of the child, as expressed to the court;
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, * * *(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
See, also, In re Byerly (Sept. 30, 1998) Portage App. Nos. 97-P-0096 and 97-P-0097.
[14] R.C. 3109.04(F)(1)(a). Jennifer Moothart while testifying, expressed her interest to regain custody of Ember in the future, and stated that she would prefer her mother, Ms. Thomas to have custody of the two children, but also testified that there was nothing wrong with the care the Nalles were providing Ember and also stated that if Ms. Thomas were to be granted custody of Ember, Ember would be hurt because she would not want to be separated from the Nalles. Jennifer also testified that she felt that both Ms. Thomas and the Nalles would facilitate an order of the court, R.C. 3109.04(F)(1)(f).
[15] R.C. 3109.04(F)(1)(e).
[16] R.C. 3109.04(F)(1)(c).
[17] R.C. 3109.04(F)(1)(d)
[18] See, In Re Davis (December 6, 200), Allen App. No. 1-2000-69.
[19] In Re Piper Children (1993), 85 Ohio App.3d 318.
[20] State ex. rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467.
[21] R.C. 3109.04(F)(1)
[22] Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
[23] Emphasis added.
[24] Riley v. Langer (1994), 95 Ohio App.3d 151, 157.
[25] Ms. Thomas's "supplement to plaintiff's objections to magistrate's decision" was filed on August 7, 2002. The Nalles filed their motion to strike the supplement on August 19, 2002.