[Cite as *Long v. Long*, 2010-Ohio-4817.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY


SARA LONG,
NKA SARA SCHOONOVER,

      PLAINTIFF-APPELLANT,          CASE NO. 14-10-01

      v.

BENJAMIN LONG,                **O P I N I O N**

      DEFENDANT-APPELLEE.


Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 06-DR-0198

**Judgment Affirmed**

Date of Decision: October 4, 2010


APPEARANCES:

    *Mark M. Feinstein* **for Appellant**

    *Dorothy Liggett-Pelanda* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-Appellant Sara Long nka Schoonover ("Sara") appeals the November 5, 2009 judgment of the Union County Court of Common Pleas designating Defendant-Appellee Benjamin Long ("Ben") the residential parent and legal guardian of their child and modifying the parties' parental rights and responsibilities as originally stated in their divorce decree.

{¶2} The parties divorce was finalized on March 7, 2007 in Union County, Ohio. The marriage produced one child, Jacob, born in 2002. As part of the divorce decree, the court issued an order allocating the parties' parental rights and responsibilities of Jacob. Sara was designated Jacob's legal guardian and residential parent. Ben was granted parenting time with Jacob which comprised of overnight-stays every Wednesday and every weekend from Friday evenings to Sunday mornings. The parties' divorce decree also granted Ben, as the non-residential parent, six consecutive weeks of parenting time each year during the summer vacation allotted by Jacob's school district.

{¶3} After the divorce, the parties continued to live within the same local vicinity which facilitated Ben's exercise of his parenting time according to the order in the divorce decree. Ben testified that he diligently exercised his parenting time with Jacob until June 2, 2009. Ben testified that on that date Sara refused to allow Ben to exercise his parenting time. Sara subsequently severed all contact

between Ben and Jacob and did not disclose Jacob's whereabouts to Ben and his family.

{¶4} On June 15, 2009, Sara filed a notice of relocation informing the court that she planned to move Jacob to East Lansing, Michigan—where Sara's new husband was working on his Ph.D. in Philosophy. On June 23, 2009, Ben filed a "Motion to Modify Parenting Time" asserting that a substantial change in circumstances had occurred and that it would be in Jacob's best interest to modify the parenting time of each party.

{¶5} On July 31, 2009, a hearing was held before a magistrate on Ben's motion to modify parenting time. Sara appeared *pro se*. On the stand, Sara admitted to preventing Ben from exercising his parenting time with Jacob since June 2, 2009. She justified her actions by stating that Ben had become increasingly argumentative with her in front of Jacob by making disparaging remarks about Sara and her new husband. However, during this time Sara had also informed Ben that she intended to move out of state and it would be necessary to reduce Ben's parenting time with Jacob to every weekend.

{¶6} Ben testified that when he did not agree to Sara's new arrangement, Sara refused to allow him to exercise his parenting time with Jacob. Sara also admitted that she never filed any documents with the court to effectuate the

proposed change in Ben's parenting time—she simply made the unilateral decision to suspend Ben's parenting time when he refused to "cooperate" with her plans.

{¶7} At the close of the hearing, the magistrate admonished both parties for arguing their differences in front of their child. However, the magistrate specifically scolded Sara for electing to use self-help rather than using the appropriate mechanisms in place within the court system to modify the existing order allocating parenting time. The magistrate then issued a temporary order permitting Ben to exercise his six-week summer visitation with Jacob because Sara's actions had prevented Ben from previously spending this time with his son. The magistrate suggested Sara retain an attorney and ordered a final hearing to be held on the motion. The magistrate's order was subsequently journalized in its August 4, 2009 Entry.

{¶8} On August 10, 2009, Ben filed a "Motion for Custody" requesting the court to grant him custody of Jacob. On September 10, 2009, Sara filed a "Motion for Shared Parenting" which requested the court to maintain the order allocating the parties' parental rights and responsibilities as stated in the divorce decree.

{¶9} On September 10, 2009, the final hearing was conducted by the magistrate. On the record, Ben's counsel orally withdrew his prior motion for modification of parenting time and affirmed that Ben wished to proceed on his

motion for custody pending before the court. Several witnesses testified including both Sara and Ben and members of their respective families.

{¶10} Based on the testimony elicited at the hearing, the magistrate rendered his decision. On September 14, 2009, the magistrate found that there had been a change of circumstances within the meaning of R.C. 3109.04(E)(1)(a) and that it was in Jacob's best interest to reallocate the parental rights of the parties. The court designated Ben as Jacob's residential parent and legal guardian. Sara was granted parenting time pursuant to the standard order of visitation and upon any agreement of the parties. Sara filed objections to the magistrate's order with the Court of Common Pleas which subsequently overruled Sara's objections by approving and adopting the magistrate's decision via its November 5, 2009 Judgment Entry.

{¶11} Sara now appeals, asserting two assignments of error.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT ERRED ON AUGUST 4, 2009, BY ESSENTIALLY AWARDING TEMPORARY CUSTODY OF THE MINOR CHILD TO THE DEFENDANT-APPELLEE WHEN NO MOTION FOR SUCH REMEDY WAS PENDING.**

**ASSIGNMENT OF ERROR II**
**THE TRIAL COURT ABUSED ITS DISCRETION ON SEPTEMBER 14, 2009 BY FINDING THAT REALLOCATION OF THE PARENTAL RIGHTS AND RESPONSIBILITIES WAS APPROPRIATE UNDER [R.C.] § 3109.04(E).**

*The First Assignment of Error*

{¶12} In her first assignment of error, Sara argues that the magistrate erred when he permitted Ben to exercise his six-week summer visitation with Jacob at the July 31, 2009 pre-trial hearing. As basis for the assignment of error, Sara argues that magistrate erroneously granted Ben temporary custody of Jacob when no motion for temporary custody was pending before the court.

{¶13} As an initial matter, we observe that although Sara challenges the temporary orders issued by the magistrate on August 4, 2009, she did not raise this issue with the trial court in the context of her objections. Civil Rule 53(D)(3)(b)(ii) governs the filing of objections to a magistrate's decision and provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding of fact or legal conclusion, unless that party has objected to that finding or conclusion to the trial court. Civ.R. 53(D)(3)(b)(iv).

{¶14} We further note that the plain error doctrine is not favored in civil appeals, and "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial

process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099, 1997-Ohio-401, syllabus. After reviewing the record before us we do not find such exceptional circumstances in this instance affecting the fairness or integrity of the judicial process.

{¶15} Moreover, even assuming *arguendo* that Sara properly raised this issue in her objections to the trial court, the magistrate's temporary order does not constitute a final appealable order. Section 3(B)(2), Article IV of the Ohio Constitution limits this Court's appellate jurisdiction to reviewing a lower court's final judgment.

{¶16} A temporary order allocating custody between parents is not a final judgment, but rather is an interlocutory order. See, e.g., *State ex rel. Thompson v. Spon* (1998), 83 Ohio St.3d 551, 554, 700 N.E.2d 1281; *State ex rel. Wallacy v. Smith* (1997), 78 Ohio St.3d 47, 50-51, 676 N.E.2d 109; *In re Devlin* (1992), 78 Ohio App.3d 543, 605 N.E.2d 467. "In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree." *Colom v. Colom* (1979), 58 Ohio St.2d 245, 389 N.E.2d 856. Thus, the court's final order supercedes the temporary orders and corrects any error. *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 413, 445

N.E.2d 1153. Therefore, the magistrate's temporary orders permitting Ben to exercise the parenting time entitled to him by the parties' divorce decree was merely interlocutory and merged with the court's final order reallocating the parties' parental rights and responsibilities.

{¶17} Based on the foregoing reasons, Sara's first assignment of error is overruled.

*The Second Assignment of Error*

{¶18} In her second assignment of error, Sara contends that the trial court abused its discretion when it determined that a reallocation of the parties' parental rights and responsibilities to designate Ben as Jacob's residential parent was appropriate in this case.

{¶19} In rendering a decision on whether to modify an existing decree allocating parental rights, a trial judge must have wide latitude in considering all the evidence before the court and such a decision must not be reversed absent an abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. The Supreme Court of Ohio further elaborated on our standard of review in custody cases in *Davis v. Flickinger*, 1997-Ohio-260, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159:

> **The standard for abuse of discretion was laid out in the leading case of C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody**

**cases in Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:**

**'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (Trickey v. Trickey [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)'**

**The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.**

{¶20} The trial court's discretion in determining parental rights must remain within the confines of the relevant statutory provisions. *Miller*, 37 Ohio St.3d at 74, 523 N.E.2d 846. Section 3109.04(E)(1) of the Revised Code governs a court's authority to modify a prior decree allocating parental rights. This section sets out in great detail the court's duties and responsibilities in dealing with these issues. *Badgett v. Badgett* (1997), 120 Ohio App.3d 448, 450, 698 N.E.2d 84.

{¶21} Specifically, R.C. 3109.04(E)(1)(a) expressly authorizes a court to modify an existing decree allocating parental right and responsibilities. See *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 57, 2007-Ohio-5589, ¶ 21, 876 N.E.2d 546 (interpreting the statute). The relevant statutory provision states, in part:

**(a)   The court *shall not modify a prior decree* allocating parental rights and responsibilities for the care of children *unless it finds*, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, *that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, <u>and</u> that the**

> *modification is necessary to serve the best interest of the child.* **In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> **\* \* \***
>
> **(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

R.C. 3109.04(E)(1)(a). (Emphasis added).

**{¶22}** In the instant case, the testimony before the magistrate revealed several issues pertinent to the inquiries of whether a "change in circumstance" had occurred since the trial court issued the decree allocating parental rights and whether a modification of the prior decree was necessary to serve Jacob's best interest.

**{¶23}** As previously mentioned, Sara testified, admitting that she willfully interfered with Ben's parenting time entitled to him by the divorce decree. Sara contended that Ben had become more argumentative with her in front of Jacob and had refused to reduce his parenting time with Jacob to accommodate Sara's plans to move to Michigan.

**{¶24}** However, she also testified that she never filed the appropriate documents with the court to modify Ben's parenting time. Instead, Sara remarried and moved out of state with Jacob without notifying Ben of his son's location.

Almost two months passed before Ben again had contact with Jacob. This occurred when the court intervened by issuing temporary orders permitting Ben to exercise his summer visitation with Jacob.

{¶25} Further testimony demonstrated that Jacob had forged strong bonds with his family in Ohio and that a move to Michigan—which required a round trip car ride of eight hours—would disrupt those relationships. Ben testified that Jacob had considerable ties with numerous family members who reside in the Marysville area—many of whom had been an integral part of Jacob's life since his birth.

{¶26} At the time of the hearing, seven-year-old Jacob had finished his third week into the new academic year at the school he also attended the previous year. By all accounts Jacob appeared to excel in school. Ben testified that Jacob attended school with two of his cousins who were in the same grade as Jacob and who saw Jacob everyday because they reside three miles from Ben's residence. Ben also testified that his home—where Jacob had been living—was on the same parcel of land as his parents, Jacob's paternal grandparents, and that Sara's mother and grandmother, Jacob's maternal grandmother and great-grandmother, as well as several aunts, uncles and cousins lived in very close proximity to Ben's home. Overall, the testimony elicited from various family members at the hearing revealed that Jacob had an intricate network of family members located in the Marysville, Ohio area.

{¶27} On the other hand, the testimony about regarding Jacob's relationships in Michigan was limited. Sara confirmed that she and her new husband had relocated to East Lansing, Michigan. Sara moved Jacob to Michigan a few months prior the hearing around the time she remarried. Sara testified that, in addition to herself, Jacob's new step-father and new step-brother were the only other members of Jacob's family who resided in Michigan. Sara further testified that Jacob had only known his step-father and step-brother for a couple months before she moved him to Michigan. Sara acknowledged that most of Jacob's relatives from both his maternal and paternal family lived in the Marysville area.

{¶28} Sara further testified that she only intended to stay in Michigan for two years while her husband finished his degree. They then planned to return to Ohio to search for employment. However, neither Sara nor her husband could state with any certainty where they would reside in two years and thus could only speculate about their Ohio employment prospects. Sara also stated that she intended to make the eight-hour drive from Michigan to Marysville and back each weekend so that Jacob could visit with Ben.

{¶29} In reviewing whether the evidence presented in this case demonstrated that a change in circumstance had occurred, we are reminded that the change must be of substance, not slight or inconsequential. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159. Furthermore, the

mere possibility of a change in circumstances in the future will not ordinarily suffice to support modification of a child custody decree. *Waggoner v. Waggoner* (1996), 111 Ohio App.3d 1, 675 N.E.2d 541, dismissed, appeal not allowed, 77 Ohio St.3d 1445, 671 N.E.2d 1284.

**{¶30}** In rendering his decision, the magistrate acknowledged the line of cases decided by this Court which hold that the relocation of the residential parent alone is not sufficient to constitute a change in circumstances. *Eaches v. Eaches*, 3rd Dist No. 8-97-05; *Thatcher v. Thatcher*, 3rd Dist. No. 10-97-08; *Heitkamp v. Heitkamp*, 3rd Dist. No. 10-01-03. However, the magistrate also highlighted that "[i]t is well settled that a custodial parent's interference with visitation by a noncustodial parent may be considered a 'change of circumstances' which would allow for a modification of custody." *Wilburn v. Wilburn* (2001), 144 Ohio App.3d 279, 760 N.E.2d 7, quoting *Mitchell v. Mitchell* (1998), 126 Ohio App.3d 500, 710 N.E.2d 793.

**{¶31}** In the present case, Sara admitted to denying Ben access to Jacob for a period of two months, clearly interfering with Ben's visitation with Jacob. Moreover, Ben expressed serious concern that Sara would again deny him access to Jacob in the future.

**{¶32}** In addition, the magistrate also noted that Sara's relocation would disrupt the familial relationships that seven-year-old Jacob had cultivated since his birth in the following excerpt from the decision:

> **In the present case the child has had on-going and close relationship with his father, grandparents and extended family that cannot be maintained without extraordinary effort while living in Michigan. It requires 8 hours of traveling by car each weekend which certainly would interfere with the ordinary activities of a boy at this stage in his life.**
> **Mother has married Mr. Schoonover who, although he may be an outstanding individual, is substantially unknown to the child until May of this year. As noted, Mr. Schoonover has custody of a son who resides with him and Mother. These facts certainly constitute a change in circumstance of the residential parent and the child.**

(J.E. Sept. 14, 2009 at 4-5).

**{¶33}** After reviewing the record before us, we find that there is a substantial amount of credible, competent evidence to support the magistrate's finding that there had been a change of circumstance. Therefore, we cannot find that the magistrate abused its discretion in determining that a change in circumstances had occurred since the prior decree and consequently we cannot find that the trial court abused its discretion in adopting the magistrates order to that extent.

**{¶34}** Once the trial court has made the threshold finding that there has been a change in circumstances, the court must then make a finding as to the best interest of the child. In making this determination, R.C. 3109.04(F)(1) directs the

court to consider all relevant factors, including those factors set forth in R.C.

3109.04(F)(1)(a)-(j) listed below.

> **(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**
>
> **(a)   The wishes of the child's parents regarding the child's care;**
>
> **(b)   If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**
>
> **(c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**
>
> **(d)   The child's adjustment to the child's home, school, and community;**
>
> **(e)   The mental and physical health of all persons involved in the situation;**
>
> **(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**
>
> **(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**
>
> **(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty**

**to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * ***

**(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

R.C. 3109.04(F).

**{¶35}** In conducting the best interest analysis, the magistrate specifically addressed each of these factors to determine whether a modification of the prior order allocating parental rights and responsibilities served Jacob's best interest. The magistrate adduced the following findings as they corresponded to relevant the R.C. 3109.04(F)(1) factors:

**(a) the parents do not agree on allocation of parental rights;**

**(b) the child was not interviewed;**

**(c) the child has an on-going and wholesome relationship with numerous family and friends in the Marysville area, including maternal relatives and grandparents. No substantive evidence was presented on the child's relationship with his step-brother or step-father;**

**(d) the child is integrated into Father and Grandparent's home in Marysville. No evidence was presented regarding his adjustment to Michigan;**

**(e) there is no evidence of metal [sic] or physical health of any person being a factor;**

**(f) Mother has unilaterally and without justification withheld the child from Father and his family for an extended period of time in an effort to compel Father's compliance with Mother's will. Mother appears to believe that Father has parental rights only at her sufferance;**

**(g) Father is in arrears on his child support payments, however, that the [sic] arrearage maybe [sic] incidental to his injury and inability to work;**

**(h) Neither parent has been convicted of an offense of the nature set forth in R.C. 3109.04[(F)(a)(1)(h)] involving a family member who is part of the current proceedings;**

**(i) Mother willfully denied parenting time to the Father in breach of this court's order; and**

**(j) Although it is said to be for a period of two years, Mother has established a residence in Michigan.**

(J.E. Sept. 14, 2009 at 6-5)

**{¶36}** After reviewing the record, it is apparent that the magistrate's best interest findings were substantially based upon testimony provided by Sara and Ben discussed above. Based on the testimony elicited at the hearing, we find that there is a substantial amount of competent, credible evidence to support the magistrate's finding that granting custody to Ben was in Jacob's best interest.

**{¶37}** Finally, we note that after finding that a change in circumstance has occurred and that Jacob's best interests would be served by a modification of custody in this case, the magistrate may not modify the custody order unless it is determined that the harm likely to be caused by the change of environment is

-17-

outweighed by the benefits of the change of environment. See R.C. 3109.04(E)(1)(a)(iii).

**{¶38}** With regard to this inquiry, the magistrate focused on Jacob's integration with his extended family and Jacob's acclimation to his current school in Marysville. The magistrate also assessed the potential harm caused to Jacob by a weekly eight-hour car trip. The magistrate found that these factors established that the harm likely to be caused by the change of environment is outweighed by the benefits of the change of environment. The magistrate further concluded that "[b]ecause of the previous living arrangement of the parties and [Ben]'s extended parenting, a reallocation of parental rights at this time actually preserves continuity to a greater [degree than not] changing custody." (J.E. Sept. 14, 2009, at 7.)

**{¶39}** We acknowledge that both Sara and Ben love Jacob and are fully capable of providing a home for him. However, based on the record before us, we find that the magistrate's decision is supported by a substantial amount of competent, credible evidence and does not constitute an abuse of discretion. Accordingly, we cannot find that the trial court abused its discretion in adopting the magistrate's decision and as such Sara's second assignment of error is overruled.

{¶40} For all these reasons, the November 5, 2009 judgment of the Union County Court of Common Pleas adopting the magistrate's decision to reallocate the parties' parental rights is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., and ROGERS, J., concur.**

**/jlr**